**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
OMAR HARVEY,                                )
                                            )
        **Plaintiff,**                          )
                                            )
   **v.**                                   )      **Civil Action No. 13-1957 (RMC) (DAR)**
                                            )
CAROLYN W. COLVIN,                          )
**Acting Commissioner of Social Security,** )
                                            )
       **Defendant.**                        )
_____           )

**OPINION**

Plaintiff Omar Harvey alleges that Defendant Carolyn Colvin, Acting Commissioner of Social Security, violated his due process rights at a hearing for reconsideration of the denial of his Social Security Benefits. The Commissioner moved to dismiss Mr. Harvey's suit for failure to exhaust his administrative remedies. The case was referred to Magistrate Judge Deborah A. Robinson, who recommended denial of the motion to dismiss. The Court concurs with the recommendation, albeit by way of a different analysis. The Court will adopt in part the Magistrate Judge's Report and Recommendation and will deny the Commissioner's motion to dismiss.

**I.  FACTS**

**A.  Proceedings before the Administrative Law Judge**

In 2010, Omar Harvey was assaulted by a baseball bat and his right leg bone was split in half. Am. Compl. [Dkt. 12] ¶ 39. Since the attack, he has had two leg surgeries and now walks with a cane. *Id.* Mr. Harvey applied for Social Security Disability Insurance benefits and Supplemental Security Income benefits in February 2011. *Id.* ¶ 41. The Social Security Administration (SSA) denied his application on April 21, 2011. *Id.* Mr. Harvey requested

1

reconsideration, which was denied, and he then requested a hearing before an Administrative

Law Judge (ALJ).  *Id.* ¶¶ 41-42.

The hearing took place on January 28, 2013 before ALJ Guy B. Arthur.  *Id.* ¶ 42.

Mr. Harvey was represented by Ellie Saadat, whom he had never met prior to the hearing.  *Id.*

¶¶ 43-44.  Mr. Harvey alleges that when he arrived at the hearing, he was asked to wait outside

the room while the ALJ and Ms. Saadat spoke privately.  *Id.* ¶ 45.  When the hearing began,[1] Ms.

Saadat and the ALJ spoke about the background of Mr. Harvey's case, including his level of

education, his work history, his injuries, and the fact that Mr. Harvey only had certain medical

records.  *See* Certified Transcript of Hearing Proceedings (Tr.) [Dkt. 14-3] at 1-3.  The ALJ then

stated that the hearing could go "off the record just for a minute."  *Id.* at 3.  There is no record of

what was discussed between Ms. Saadat and the ALJ at that time.  *Id.*

Mr. Harvey alleges that before the hearing went back on the record, Ms. Saadat

"came out of the hearing room and told Mr. Harvey that the ALJ stated that there were

insufficient medical records from the year preceding the hearing (2012-2013) to rule in Mr.

Harvey's favor" and that "the ALJ had advised that the best course of action would be to

withdraw his hearing request."  Am. Compl. ¶¶ 48-49.  Apparently, after that conversation, Mr.

---

[1] The transcript is ambiguous as to whether Mr. Harvey was present when the hearing started.
The Court Reporter's notes state that "[t]he Claimant appeared in person and was represented,"
Tr. at 1, but the ALJ initially referred to Mr. Harvey as a woman, and was corrected by Ms.
Sadaat, *id.* at 1-2, suggesting that Mr. Harvey was not actually in the courtroom at the time.  The
Commissioner argues that the "transcript does not document any movement of anyone into or out
of the hearing room."  Def. Mem. at 6-7.  However, this is unsurprising given that much of the
hearing was conducted off the record.  The Commissioner also notes that the ALJ spoke directly
to Mr. Harvey, *see id.*, but Mr. Harvey does not dispute that by that point, he had come into the
courtroom.

Harvey and Ms. Saadat then went back in the hearing room and an off the record "discussion then took place between the ALJ, Ms. Saadat, and Mr. Harvey." *Id.* ¶ 50.[2]

Mr. Harvey alleges that the ALJ stated there was insufficient medical evidence to rule for Mr. Harvey. Am. Compl. ¶¶ 52. The ALJ told Mr. Harvey that "the best course of action would be to withdraw his hearing request" and explained that "if Mr. Harvey withdrew his hearing request, he would have the opportunity for a new hearing where he could present more medical records." *Id.* ¶¶ 57-58. According to Mr. Harvey, the ALJ did not ask him whether he had records from the 2012-2013 time period or suggest that he get medical records from that time. *Id.* ¶¶ 53-54. Nor did the ALJ ask Mr. Harvey questions about his medical conditions, his symptoms, or his medical treatment.[3] *Id.* ¶ 55.

When the hearing went back on the record, the ALJ did not make any reference to what had transpired off the record, but noted that he had before him a motion "tendered by counsel to withdraw the current hearing request." Tr. at 3-4. Mr. Harvey's motion to withdraw his hearing request is a one page document that contains no statement of the reasons for withdrawing the request. *See* Am. Compl., Ex. B [Dkt. 12-2] (Withdrawal of Hearing Request).

The ALJ asked Mr. Harvey whether he made his motion to withdraw "voluntarily and without coercion" and whether he understood the legal consequences. Tr. at 4. The transcript reveals that Mr. Harvey replied "Yes (INAUDIBLE)." *Id.*

---

[2] At some point when Mr. Harvey and Ms. Saadat were back in the hearing room, Ms. Sadaat told the ALJ that "I haven't been able to get his signature, but I did explain to him the situation." Tr. at 3. The ALJ responded "Do you need a minute or two to talk to him some more? I can step out of the courtroom. Sir, you can stay right here if you like and just talk to your attorney." *Id.* Then the hearing went off the record again.

[3] Mr. Harvey states that he received medical treatment during 2012-2013 but mainly at emergency rooms rather than primary care doctors because he lacked health insurance. Am. Compl. ¶ 56. Mr. Harvey states that he had no opportunity to explain this to the ALJ. *Id.*

The ALJ continued:

> [T]his does not preclude you from, in the future, going ahead and filing. In fact, if once you receive my decision you could immediately, you know, through counsel turn around and file a new application using Dr. Robie's statement, and any other evidence that you might have. And what you want to do is build a medical record for yourself, sir, so that there's documentation. Any judge looking at it has to find a 12-month continuous period of time medically documented. And, you know, your attorney has been arguing your case, but she can only do the best she can within the record that's provided to her, all right?

Tr. at 4.  After that, the hearing was concluded.  *Id.* at 4-5.

The next day, January 29, 2013, the ALJ issued a notice and order dismissing Mr. Harvey's hearing request.  *See* Am. Compl., Ex. C [Dkt. 12-3] (Notice and Order of Dismissal). Mr. Harvey subsequently received a letter from Ms. Saadat's office stating that he was no longer represented.  Am. Compl. ¶ 77.  Mr. Harvey filed a *pro se* request for review of the dismissal of his hearing request and his request was denied by the SSA Appeals Council on August 9, 2013. *See* Am. Compl., Ex. D [Dkt. 12-4] (Notice of Appeal Council Action).

**B. SSA Regulations and Guidelines**

SSA issues policy guidelines regarding claims for benefits in its Hearings.  *See* Appeals and Litigation Law Manual (HALLEX) and the Program Operations Manual System (POMS).[4]  The POMS states that withdrawal of hearing requests made in writing or orally must include a statement of reasons for requesting withdrawal, and a statement that the claimant understands the effect of the request.  POMS SI 04030.020.A(4)(a).  The POMS gives the ALJ

---

[4] The POMS regarding Supplemental Security Income (SI) is available at https://secure.ssa.gov/apps10/poms.nsf/chapterlist!openview&restricttocategory=05 (last visited June 26, 2015).  The HALLEX Manual is available at http://ssa.gov/OP_Home/hallex/hallex.html (last visited June 26, 2015).

authority to refuse to approve a withdrawal request if the ALJ "believes that the appellant did not understand the consequences of a withdrawal." *Id.* at (4)(b).

The HALLEX Manual "communicates . . . guiding principles and procedures" to the staff of the Office of Disability Adjudication and Review (ODAR) staff, including "adjudicators. i.e., administrative law judges." HALLEX 1-1-0-3. It requires that, before an ALJ can dismiss a request for a hearing following a claimant's voluntary withdrawal, the "record [must] show[ ] that the claimant understands the effects of withdrawal (i.e., that the ALJ will dismiss the [hearing request] and the dismissal will be binding unless it is vacated by the ALJ or the Appeals Council)." *Id.* at I-2-4-20(A)(2).

SSA regulations require an ALJ to "make a complete record of the hearing proceedings." 20 C.F.R. §§ 404.951, 416.1451. The HALLEX manual further provides that "[i]f a question arises during the course of a hearing that is not relevant to the issues in the claimant's case, the ALJ may decide to discuss and resolve it off-the-record. However, the ALJ must summarize on the record the content and conclusion of any off-the-record discussion." HALLEX 1-2-640.

### C. Procedural Background

Mr. Harvey filed a Complaint in this Court on December 9, 2013, and amended his Complaint on March 23, 2014. In the Amended Complaint, Mr. Harvey alleges that the ALJ violated his right to due process; specifically, he claims that the ALJ deprived him of meaningful notice and the opportunity to be heard; failed to comply with his duty to inquire fully into all relevant facts and medical evidence in Mr. Harvey's case before suggesting that he withdraw his hearing request; gave him inaccurate information and failed to apprise him adequately of the consequences of withdrawing his hearing request; and allowed substantive conversations about the merits of his case to occur outside his presence and with the hearing recording turned off (thereby

making judicial review impossible).  Am. Compl. ¶ 85.  Mr. Harvey further alleges that the ALJ

violated specific SSA regulations by (1) dismissing Mr. Harvey's hearing request without ensuring

that the record reflected that Mr. Harvey understood the consequences of doing so; (2) failing to

obtain a statement from Mr. Harvey, orally or in writing, about why he wished to withdraw his

hearing request; and (3) failing to record or summarize all discussions that took place during Mr.

Harvey's hearing.  *Id.* ¶¶ 87-89.  In support of his Amended Complaint, Mr. Harvey attached four

exhibits: (1) an informal hearing transcript, prepared by counsel based on the recording of the

hearing provided by the Social Security Administration; (2) Mr. Harvey's signed "Withdrawal of

Hearing Request" form; (3) SSA's Notice of Dismissal of Mr. Harvey's request for a hearing; and

(4) SSA's Notice of Appeals Council Action, denying Mr. Harvey's request for review of the

dismissal of his request for a hearing.

      In response, the Commissioner moved to dismiss Mr. Harvey's Amended

Complaint on the ground that he had not exhausted his administrative remedies.  *See* Mot. to

Dismiss [Dkt. 13]; Mem. in Support of Def. Mot. to Dismiss (Def. Mem.) [Dkt. 14] at 1.[5]  The

Commissioner further argued that Mr. Harvey had not alleged any permissible basis for waiver

of the exhaustion requirement, such as "where the plaintiff raises a challenge wholly collateral to

his claim for benefits and makes a colorable showing that his injury could not be remedied by the

retroactive payment of benefits."  Def. Mem. at 5-6.  The Commissioner insisted that Mr. Harvey

was not deprived of meaningful notice, that he was represented by an attorney, that he

voluntarily requested the dismissal, and confirmed he understood the legal consequences of the

---

[5] The Commissioner's motion is labeled as a "Motion to Dismiss the Amended Complaint For
Lack of Subject Matter Jurisdiction" but asserts that the complaint should be dismissed for
failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Mot. to Dismiss.  The
memorandum in support of the motion to dismiss asserts that the Amended Complaint should be
dismissed for lack of subject matter jurisdiction because Mr. Harvey did not exhaust his
administrative remedies.  Def. Mem. at 1.

dismissal.  *Id.* at 6-8.  Mr. Harvey opposed the motion to dismiss, arguing that because he had

presented a colorable constitutional claim that the ALJ denied him a hearing in violation of his

due process rights, the exhaustion requirements should be waived and the motion to dismiss

denied.  *See* Pl. Opp. to Def. Motion to Dismiss (Pl. Opp.) [Dkt. 15].

On June 3, 2014, the Court referred this case to Magistrate Judge Deborah A.

Robinson for a Report and Recommendation (R&R).  Minute Order dated 6/3/14.  On March 12,

2015, Magistrate Judge Robinson issued an R&R, analyzing the Commissioner's motion to

dismiss under Rule 12(b)(6).  R&R [Dkt. 18] at 2.  She noted that because the Commissioner

styled the motion as one to dismiss for lack of subject matter jurisdiction but also moved

pursuant to Rule 12(b)(6), "the undersigned considers the . . . motion in accordance with the

precedent governing motions made pursuant to the subsection of the Rule on which the

Commissioner actually relies."  *Id.* at 2 n.1.

Magistrate Judge Robinson stated that the Commissioner offered three exhibits in

support of her motion: (1) the declaration of Patrick Herbst, chief of a branch of the SSA's

Office of Disability Adjudication and Review (Herbst Declaration); (2) the notice of dismissal of

Mr. Harvey's request for a hearing, and (3) the order of dismissal of Mr. Harvey's request for a

hearing and notice of Appeals Council action.  *Id.* at 2-3.[6]  Finding that the Commissioner

"principally relie[d]" on the Herbst Declaration, Magistrate Judge Robinson concluded that she

had "no alternative" but to recommend denial of the Commissioner's motion because Rule 12 of

the Federal Rules makes plain that "[i]f on a motion under Rule 12(b)(6) . . . matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for

---

[6] As discussed *infra*, although not noted by Magistrate Judge Robinson, the Commissioner also
attached an official copy of the transcript of Mr. Harvey's hearing before the ALJ.  *See* Tr. [Dkt.
14-3].

summary judgment under Rule 56[,] [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* at 3 (quoting Fed. R. Civ. P. 12(d)).

Magistrate Judge Robinson was "mindful that Plaintiff [did] not oppose the Commissioner's motion on the ground that he [had] not yet had an opportunity to present evidence in opposition," but found that the Commissioner did not address Plaintiff's allegation that the ALJ violated due process by preventing Mr. Harvey from obtaining the very hearing on which exhaustion depends, thus frustrating "the adversarial process for sharpening the issues for decision." *Id.* at 4 (quoting *Coleman through Bunn v. Dist. of Columbia*, Civil Action No. 13-1456, 2014 WL 19092, at *17 (D.D.C. Sept. 30, 2014)).  Magistrate Judge Robinson concluded that "'a reasonable opportunity to contest the matters outside the pleadings' includes both an opportunity for discovery, and a more thorough briefing of the exhaustion issue in accordance with the Federal Rules," and recommended denial of the motion to dismiss. *Id.* at 4-5.

The Commissioner timely filed her objections to the R&R on March 26, 2015. *See* Def. Objections to R&R (Def. Obj.) [Dkt. 19].  First, the Commissioner complains that the R&R erroneously considered the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), instead of construing it as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  Second, the Commissioner argues that, in any event, the motion to dismiss passes muster under Rule 12(b)(6) because "there are no substantive matters here that are truly outside the pleadings." *Id.* at 2.  Third, the Commissioner objects to the R&R's finding that the motion to dismiss failed to address Mr. Harvey's contention that the ALJ prevented him from exhausting his administrative remedies.  Fourth, the Commissioner contends that Magistrate Judge Robinson incorrectly concluded that she could not convert the motion to one for summary judgement because the parties were entitled to present evidence before such a ruling, including

discovery and more thorough briefing of the exhaustion issue.  Mr. Harvey responded to these

objections urging the Court to adopt the R&R.  *See* Pl. Resp. [Dkt. 21].[7]

## II.  LEGAL STANDARDS

### A.  Report and Recommendation

Rule 72(b) of the Federal Rules of Civil Procedure sets forth the procedure for

review of dispositive motions that have been referred to a magistrate judge for a Report and

Recommendation (R&R).  Any party may file objections to the proposed findings and

recommendations and the district judge "must determine de novo any part of the magistrate

judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b).  "The district

judge may accept, reject, or modify the recommended disposition; receive further evidence; or

return the matter to the magistrate judge with instructions."  *Id.*

### B.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

a claim.  Fed. R. Civ. P. 12(b)(6).  Although a complaint does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The facts alleged "must be

enough to raise a right to relief above the speculative level."  *Id.*

In considering a motion to dismiss under Rule 12(b)(6), the Court must construe

the complaint liberally in favor of the plaintiff, granting him "the benefit of all inferences that

---

[7] Mr. Harvey also filed a motion requesting referral to the Court's mediation program [Dkt. 22], which the Commissioner opposes [Dkt. 23].  The Court will deny the motion at this time without prejudice.

can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276, 305 U.S. App. D.C. 60 (D.C. Cir. 1994).  Still, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In ruling upon a motion to dismiss for failure to state a claim, the court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).  If a district court refers to materials outside the pleadings in resolving a 12(b)(6) motion, it must convert the motion to dismiss into one for summary judgment.  Fed. R. Civ. P. 12(d); *see also Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007); Wright & Miller § 1277.  "In converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011); Fed. R. Civ. P. 12(d), 56.

## III.  ANALYSIS

The Commissioner first argues that the R&R erroneously applied Federal Rule of Civil Procedure 12(b)(6) to her motion to dismiss, instead of considering it under Rule 12(b)(1). While acknowledging that the motion to dismiss incorrectly cited Rule 12(b)(6), the Commissioner argues that this mistake should not negate the substance of the motion, which

argued the lack of subject matter jurisdiction.  The Court disagrees that the motion was proper

under 12(b)(1), albeit for different reasons than Magistrate Judge Robinson.[8]  In her motion to

dismiss, the Commissioner maintained that Mr. Harvey did not exhaust his administrative

remedies because he did not have a hearing;[9] such a motion is more properly construed as a

motion to dismiss for failure to state a claim.  While the D.C. Circuit has not explicitly opined on

the question, courts in this Circuit tend to treat failure to exhaust or to show waiver of exhaustion

of administrative remedies, "'as a failure to state a claim rather than as a jurisdictional

deficiency.'"[10]  *Beattie v. Astrue*, 845 F. Supp. 2d 184, 191 (D.D.C. 2012) (quoting *Ly v. U.S.*

---

[8] Magistrate Judge Robinson stated that: "Defendant styles the motion a motion to dismiss 'for Lack of Subject Matter Jurisdiction[.]'  However, as Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure—which provides for dismissal of a complaint for failure to state upon which relief can be granted—rather than Rule 12(b)(1)—which provides for dismissal of a complaint for lack of jurisdiction over the subject matter—the undersigned considers the pending motion in accordance with the precedent governing motions made pursuant to the subsection of the Rule on which Defendant actually relies."  R&R at 2 n.1.

[9] In order to exhaust administrative remedies under the Social Security Act, a claimant must have received (1) an initial determination regarding his claim for benefits, (2) reconsideration, (3) a hearing before an administrative law judge and, finally, (4) Appeals Council review.  20 C.F.R. § 404.900(a)(1).  Under 42 USC § 405(g), "[a]ny individual, after any *final decision* of the Commissioner of Social Security *made after a hearing* to which he was a party" may obtain judicial review of such decision.  Courts have found a failure to exhaust when no hearing occurs because a claimant withdrew his request.  *Beattie v. Astrue*, 845 F. Supp. 2d 184, 189 n.9 (D.D.C. 2012) ("Because [Plaintiff] withdrew his request, no hearing was held and no final decision ever issued.); *see also Hoye v. Sullivan*, 985 F.2d 990, 991 (9th Cir. 1992) (finding that when a plaintiff "waived his opportunity for a hearing," "he failed to exhaust the administrative remedy upon which judicial review depends").

[10] "The Supreme Court has construed 42 U.S.C. § 405(g) as having jurisdictional and non-jurisdictional exhaustion components.  The requirement that a plaintiff must first present his claim to the agency is jurisdictional and cannot be waived, while the requirement that the plaintiff must complete the agency review process is non-jurisdictional and may be waived." *Cost v. SSA*, 770 F. Supp. 2d 45, 48 (D.D.C. 2011) (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000)).  "A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is inappropriate where a defendant claims that a plaintiff failed to comply with only the non-jurisdictional exhaustion requirement [rather than the presentment requirement]." *Id.*

*Postal Serv.*, 775 F. Supp. 2d 9, 11 (D.D.C. 2011)); *Hall v. Sebelius*, 689 F. Supp. 2d 10, 21

(D.D.C. 2009) (while "[t]here is some uncertainty regarding whether a failure to exhaust

administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect,

or in a Rule 12(b)(6) motion for failure to state a claim . . . . [t]he recent trend in this District . . .

is to treat failure to exhaust as a failure to state a claim rather than as a jurisdictional deficiency")

(citing cases); *but see Jones v. United States*, 813 F. Supp. 2d 210, 214 (D.D.C. 2011) (granting

motion to dismiss for failure to exhaust under Rule 12(b)(1)).  Accordingly, the Court considers

the Commissioner's motion to dismiss as one for failure to state a claim upon which relief can be

granted.

      Having determined that the motion to dismiss must be evaluated under Rule

12(b)(6), the Court turns to the Commissioner's argument that Magistrate Judge Robinson

improperly denied the motion on the ground that the Commissioner submitted materials outside

the pleadings.  Def. Obj. at 2.  The Commissioner explains that, contrary to the R&R's finding,

the motion to dismiss did not principally rely on the Herbst Declaration; rather, the Declaration

was merely a "procedural vehicle containing no substantive information that is not already

contained in the exhibits themselves (the two notices and the hearing transcript) that both parties

submitted to the court."  Def. Obj. at 4.  According to the Commissioner, "the [D]eclaration

serves primarily to establish that these substantive exhibits are authentic documents that

originated from Plaintiff's claims file—a fact that Plaintiff does not challenge."  *Id.*

      The Court concludes that the R&R could have considered the motion to dismiss

under 12(b)(6) despite the attached three-page Herbst declaration explaining SSA's appellate

review procedures and certifying the relevant SSA documents in Mr. Harvey's case (all of which

were also attached to Mr. Harvey's Complaint).  *See* Herbst Declaration [Dkt. 14-1].  Federal

Rule of Civil Procedure 12(d) states that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  But just because the Herbst Declaration was "presented" with the Commissioner's motion to dismiss did not automatically require conversion to summary judgment.  The law of this Circuit makes clear that conversion of a motion to dismiss to one for summary judgment is only required when the district court "refer[s] to materials outside the pleadings in *resolving* a 12(b)(6) motion." *Kim*, 632 F.3d at 719 (emphasis added); *see also Ruffin v. Gray*, 443 Fed. Appx. 562, 563-564 (D.C. Cir. 2011) (finding that even though district court did not expressly exclude attachments to both a motion to dismiss and a response, it did not err in failing to convert the motion to dismiss to a summary judgment motion because it only considered items listed in Rule 12(b)(6)); *McKinney v. Dole*, 765 F.2d 1129, 1134 (D.C. Cir. 1985) (conversion required under Rule 12(d) only where "[d]istrict [c]ourt considered materials outside the pleadings in dismissing the case"), *abrogated on other ground by Stevens v. Department of Treasury*, 500 U.S. 1 (1991).  Here, there is no need to consider the Herbst Declaration in deciding the motion to dismiss and, accordingly, there is no need to convert the motion to one for summary judgment.

Nonetheless, the Court agrees with the R&R's recommendation to deny the Commissioner's motion to dismiss.  The Court finds that Mr. Harvey has alleged facts supporting his claim that he should be excused from prior exhaustion of his administrative remedies because he raises a colorable constitutional challenge to the very conduct that prevented him from achieving exhaustion.

As noted above, to exhaust administrative remedies under the Social Security Act, a claimant must have received (1) an initial determination regarding his claim for benefits, (2)

13

reconsideration, (3) a hearing before an ALJ and, finally, (4) Appeals Council review.  20 C.F.R.

§ 404.900(a)(1).  A district court may relieve a claimant from SSA's exhaustion requirement

when he makes a colorable constitutional challenge that is collateral to any claim for benefits.

*Mathews v. Eldridge*, 424 U.S. 319, 329-31 (1976); *Califano v. Sanders*, 430 U.S. 99, 109 (U.S.

1977) (finding that claimant alleging a colorable constitutional claim could bring suit in federal

court despite lacking a "final decision of the Secretary made after a hearing").  A constitutional

claim is "colorable" so long as it is not "wholly insubstantial, immaterial or frivolous."  *Vencor*

*Nursing Ctrs, L.P. v. Shalala*, 63 F. Supp. 2d 1, 5 (D.D.C. 1999) (quoting *Boettcher v. HHS*, 759

F.2d 719, 722 (9th Cir. 1985)); *Hoye v. Sullivan*, 985 F.2d 990, 991-02 (9th Cir. 1992) ("A

constitutional claim is not colorable if it clearly appears to be immaterial and made solely for the

purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous." (internal quotations

omitted)).[11]

---

[11] Certain courts in this district have quoted a Ninth Circuit case for the proposition that "the mere allegation of a due process violation is insufficient to raise a colorable constitutional claim that will provide the Court with subject-matter jurisdiction."  *See Maiden v. Barnhart*, 450 F. Supp. 2d 1, 4 (D.D.C. 2006) (quoting *Hoye*, 985 F.2d at 992); *Beattie*, 845 F. Supp. 2d at 193 (quoting *Maiden*, 450 F. Supp. 2d at 4) and *Harris v. Sebelius*, 932 F. Supp. 2d 150, 152 (D.D.C. 2013) (same).  "[I]f jurisdiction were to be sustained by mere allegations of denials of due process, 'every disappointed claimant could raise such a due process claim, thereby undermining a statutory scheme designed to limit judicial review.'"  *Hoye*, 985 F.2d at 992 (quoting *Holloway v. Schweiker*, 724 F.2d 1102, 1105 (4th Cir. 1984)).  *Hoye* explained that the plaintiff did not raise a colorable substantive due process challenge because his sole allegation was "that the ALJ arbitrarily and capriciously dismissed his request for a hearing because the ALJ was biased against his attorney" and "[i]f the mere allegation of a denial of due process can suffice to establish subject-matter jurisdiction, then every decision of the Secretary would be [judicially] reviewable by the inclusion of the [magic] words' 'arbitrary' or 'capricious.'"  *Id.* at 992 (quoting *Robertson v. Bowen*, 803 F.2d 808, 810 (5th Cir. 1986)).  Those concerns are not present here and Mr. Harvey's case is distinguishable from *Hoye* because his due process claim surpasses the threshold of colorability.  The facts as alleged in his Amended Complaint establish more than a bare, unsupported allegation of a due process violation and his claim is not immaterial, insubstantial or frivolous.

Mr. Harvey does not dispute that he failed to exhaust his administrative remedies because he did not have a hearing before an ALJ on the denial of his claim for benefits. However, Mr. Harvey alleges the exhaustion requirement should be waived because of his colorable due process claim. Specifically, Mr. Harvey alleges that: (1) the ALJ denied him the opportunity to be heard because the ALJ recommended withdrawal before giving him the opportunity to present evidence or testimony about his medical history; (2) the ALJ violated due process protections by failing to inform Mr. Harvey of the adverse consequences of withdrawing his hearing request; and (3) the ALJ denied him the right to be present throughout the proceedings by excluding him from key discussions with counsel about the merits of his case and failing to record or summarize those key discussions. Pl. Opp. at 7-8.

As an initial matter, Mr. Harvey has shown that his challenge is "collateral to his substantive claim of entitlement . . . ." *Matthews*, 424 U.S. at 330. Mr. Harvey does not seek a reversal of the Commissioner's decision to deny him benefits, but requests remand of his case to the agency so that it can determine whether an award of benefits is warranted. Other Circuits have held such claims to be collateral to a substantive claim for benefits when, as here, the plaintiffs "would not automatically be entitled to receive benefits if they prevail, but only to receive 'the procedure they should have been accorded in the first place.'" *Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994) (quoting *Bowen v. City of New York*, 476 U.S. 467, 484 (1986)); *see also Schoolcraft v. Sullivan*, 971 F.2d 81, 86 (8th Cir. 1992); *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991); *State of New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990*); Hyatt v. Heckler*, 807 F.2d 376, 379-380 (4th Cir. 1986). Mr. Harvey's due process claim is collateral to his demand for benefits because he alleges the due process violations caused his demand to be denied. *Beattie*, 845 F. Supp. 2d at 192.

15

The Court also finds that, for the purposes of a motion to dismiss, Mr. Harvey has pled facts sufficient to allege colorable due process violations. *See, e.g., Thorbus v. Bowen*, 848 F.2d 901, 903 (8th Cir. 1988) (assuming without deciding that plaintiff's constitutional claim—denial of due process because he was excluded from Medicare without notice or a hearing—was "sufficiently colorable" despite facts that were "marginal to support a colorable claim"). To start, considering the lack of a full transcript of Mr. Harvey's hearing, and construing Mr. Harvey's allegations in the light most favorable to him as the Court is required to do on a motion to dismiss, Mr. Harvey sufficiently pleads a colorable due process claim that the ALJ failed to develop a comprehensive record for a full and fair hearing. *See* Am. Compl. ¶¶ 52, 56, 57 (alleging that ALJ suggested Mr. Harvey withdraw hearing request because of insufficient medical record and that ALJ failed to provide opportunity to explain that he had received treatment in relevant time frame).

An ALJ "has the power and duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability." *Diabo v. Secretary of Health, Education & Welfare*, 627 F.2d 278, 281 (D.C. Cir. 1980). Here, Mr. Harvey alleges that he had received medical treatment in the year 2012-2013 but had mainly been treated in emergency rooms rather than by primary care doctors because he lacked health insurance. Am. Compl. ¶ 56. However, instead of inquiring whether Mr. Harvey had additional records, the ALJ simply told Mr. Harvey that a judge looking at his record "has to find a 12-month continuous period of time medically documented" and that the attorney "can only do the best she can within the record that's provided to her." Tr. at 4.[12] But Mr. Harvey was given no

---

[12] It is possible that the ALJ did conduct such an inquiry, but the Court cannot make such a finding because no such investigation is set forth or is summarized in the transcript.

opportunity to explain that he had received medical treatment during the relevant time frame.[13]

If he had been given such an opportunity, the ALJ could have kept the record open for the

submission of additional medical evidence or continued the hearing to a later date on the ground that

material evidence was believed to be missing, both of which are permitted by agency regulations.

*See, e.g.*, 20 C.F.R. § 404.944.  Indeed, Mr. Harvey seems to have been under the impression that the

ALJ was in fact continuing the hearing; according to Mr. Harvey, he was told by the ALJ that if he

withdrew his hearing request, he would get a new hearing where he could present additional

medical records.  Am. Compl. ¶¶ 57, 58, 72, 73.  Perhaps there were interactions off the record

that might undermine Mr. Harvey's allegations about his medical history, but based on the scant

evidence before it, the Court cannot disregard the allegations pled in the Complaint.

Furthermore, the Court cannot accept the Commissioner's argument that the ALJ was under no

obligation to inquire into Mr. Harvey's medical history and that "it would have been

inappropriate for him to do so[ ] once it became clear that Plaintiff did not wish to proceed with a

hearing on the merits of his claim."  Def. Mem. at 7.  The transcript of the hearing does not

reveal any indication of Mr. Harvey "not wishing to proceed" until the end of the hearing, when

the ALJ had before him a signed withdrawal request (by which point Mr. Harvey alleges, he had

already been told that he would have an additional hearing).  Thus, to the extent shown by the

record, there was no full consideration of whether there was medical evidence to support Mr.

Harvey's claim.

        Mr. Harvey also asserts that the ALJ failed to provide adequate notice of the

impact of his decision to withdraw.  The transcript reveals that the ALJ asked Mr. Harvey if he

---

[13] Mr. Harvey does not argue that he currently *has* other medical records but states that he
received medical treatment in the year 2012-2013.  Am. Compl. ¶ 56.  This allegation is sufficient
on a motion to dismiss to support his claim that he was denied a meaningful opportunity to be heard.

were withdrawing his hearing request "voluntarily and without coercion" and if he understood the legal consequences of his withdrawal, Tr. at 4, but the ALJ provided no explanation as to what those legal consequences were.  Taking Mr. Harvey's allegations as true—that he was advised that he would have another hearing to present evidence and was not advised that his withdrawal would finalize his appeal process—the Court finds that Mr. Harvey pleads a due process violation of insufficient notice, which survives a motion to dismiss.  *See, e.g., Loudermilk v. Barnhart*, 290 F.3d 1265, 1269 (11th Cir. 2002) (finding notice advising claimants of rights defective because claimants were not properly apprised of res judicata effect of filing new petition rather than appealing the initial, negative decision).

In accepting the withdrawal request, the ALJ stated that the request "does not preclude you from, in the future, going ahead and filing . . . . a new application" and told Mr. Harvey to "build a medical record."  Tr. at 4.  However, he did not explain that the only way to get a new hearing was by filing a "new application."  Thus, it is understandable, given that Mr. Harvey was allegedly told he would have a new hearing to present evidence, that Mr. Harvey thought that his hearing date would be rescheduled to another day after he had a chance to get more medical records, and that his appeal was still alive.  *See* Am. Compl. ¶¶ 57, 58, 71-74.  The ALJ also failed to note that the decision to withdraw would be the end of Mr. Harvey's appeal and that even if he reapplied he would only get benefits back to the date of his new application and not back to the date of the initial application, both of which could have alerted Mr. Harvey to the fact that this decision was final.

Moreover, the ALJ acted in violation of the POMS and HALLEX guidelines in failing to ensure that Mr. Harvey's withdrawal included a statement of reasons as to why he wished to withdraw his hearing request, *see* 20 C.F.R. §§ 404.957, 416.1457; POMS SI

04030.020.A(4)(a), and failing to confirm that Mr. Harvey understood the effects his withdrawal

request "i.e., that the ALJ will dismiss the [request] and the dismissal will be binding,"

HALLEX I-2-4-20(A)(2).  There is no indication that the ALJ took these steps off the record and

the ALJ did not summarize or record the content of any off-the-record conversations that took

place during the hearing.  *See* 20 C.F.R. §§ 404.95 1, 416.1451; HALLEX 1-2-640.  Even though

these agency manuals do not have the force of law, "most courts have treated the POMS as

interpretive rules entitled to deference at the lower level established in *Skidmore v. Swift &

Company*[, 323 U.S. 134 (1944)]."  *Hall v. Sebelius*, 689 F. Supp. 2d 10, 21 (D.D.C. 2009); *see

also Wash. State Dept. of Soc. and Health Servs. v. Guardianship Estate of Wash. State Dept. of

Soc. and Health Servs.*, 537 U.S. 371, 385 (2003) (While "administrative interpretations are not

products of formal rulemaking, they nevertheless warrant respect" and are entitled to *Skidmore*

deference.).  Indeed, while not dispositive, failure to abide by agency regulations is a factor

weighing in favor of finding a colorable due process violation.  *See, e.g., Dexter v. Colvin*, 731

F.3d 977, 981-82 (9th Cir. 2013) (finding due process violation where ALJ failed to follow

regulations while noting that not every failure would necessarily rise to that level).

Finally, Mr. Harvey claims that the ALJ violated his right to be present at the

hearing by excluding him from substantive off-the-record discussions about his case.  Claimants

have a due process right to attend SSA hearings.  *See Stoner v. Secretary of Health & Human

Services*, 837 F.2d 759, 760-61 (6th Cir. 1988) (finding that claimant was denied due process

rights when hearing was conducted in his absence and he was represented by attorney); *see also*

HALLEX 1-2-6-60(C) (noting that the claimant must agree before being excused from the

hearing room, even where the representative remains).  The transcript is ambiguous as to whether

Mr. Harvey was present for the entire hearing (*see supra* n.1), but on a motion to dismiss, the

Court is obligated to accept Mr. Harvey's claims as alleged: that he was forced to wait outside the hearing room while the ALJ spoke to his lawyer and his lawyer then relayed to him the substance of her conversation with the ALJ, in which the ALJ stated that there were insufficient medical records and that the ALJ thought Mr. Harvey should withdraw his hearing request.  Am. Compl. ¶¶ 45, 48, 49.  Also troublesome to the Court is the fact that substantive discussions appear to have taken place off the record, in violation of agency regulations, which again weighs in favor of finding a due process violation.  *See Betancourt v. Astrue*, 824 F. Supp. 2d 211, 217 (D. Mass. 2011) (finding due process violation where ALJ engaged in off-the-record discussions with claimant and claimant felt pressured to proceed without full hearing).  The Commissioner describes Mr. Harvey's claims as "unsubstantiated" and "unverifiable," but of course the reason why the facts alleged by Mr. Harvey cannot be confirmed or denied by the record is a result of the very conduct complained about—i.e., that the ALJ, in violation of SSA regulations, directed that portions of the hearing be held off the record "thereby making it impossible for [Mr. Harvey] to corroborate his own account of what occurred."  Pl. Opp. at 1.  *Cf. Beattie*, 845 F. Supp. 2d at 193 (finding no colorable constitutional claim after reviewing hearing transcript and concluding that plaintiff's allegations of misconduct by ALJ were unsupported and belied by administrative record).

        As Magistrate Judge Robinson found, the Commissioner's motion to dismiss does not sufficiently address Mr. Harvey's due process allegations, a finding to which the Commissioner objects.  The Commissioner claims that there is no violation because "Plaintiff chose to withdraw his request for hearing, and the ALJ accommodated that request" and that "Plaintiff himself requested the dismissal."  Def. Obj. at 5.  The problem with these assertions is that it is simply impossible to tell from the transcript whether Mr. Harvey had an opportunity to

explain his medical history, whether he was counseled about the adverse consequences of his withdrawal request, and whether he was prevented from participating in substantive discussions at the hearing—all of which Mr. Harvey alleges failed to happen.  In arguing that Mr. Harvey's claims are unsupported, the Commissioner does not contradict Mr. Harvey's version of events, nor does she present any affidavits or counterstatements of fact that might support her arguments.[14]

Mr. Harvey also meets the three-part showing required to waive the administrative exhaustion requirement.  "A court may waive the exhaustion requirements of § 405(g) when: (1) the issue raised is entirely collateral to a claim for payment; (2) plaintiffs show they would be irreparably injured were the exhaustion requirement enforced against them; and (3) exhaustion would be futile."  *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 (D.D.C. 2008) (citing *Bowen*, 476 U.S. at 483-85).  As discussed above, the relief sought by Mr. Harvey is collateral to his substantive claim for benefits.  He has also alleged irreparable injury: if judicial review is unavailable to him because of his failure to exhaust, he has no way to challenge the dismissal of his hearing request.  While Mr. Harvey can reapply for benefits, that application, if granted, would only entitle Mr. Harvey to retroactive benefits from the date of his new application, and he would never be able to collect benefits from the date of his initial February 2011 application.  *See* POMS SI 04030.020.A (determination about denial of benefits is

---

[14] Citing no case law, the Commissioner makes two further arguments that Mr. Harvey's due process rights were not violated.  Def. Obj. at 5.  First, the Commissioner contends no violation occurred because Mr. Harvey was represented by an attorney who was present at the hearing.  But the presence of a lawyer does not protect against all due process violations.  *See Stoner*, 837 F.2d at 760-61; *Betancourt*, 824 F. Supp. 2d at 216-17.  Second, the Commissioner argues that "there is no evidence that Plaintiff has a mental impairment that would prevent him from understanding the consequences of the ALJ granting his request."  *Id.*  This argument misses the mark.  The ALJ failed to make a record here—not Mr. Harvey—and the absence of a record leaves Mr. Harvey's allegations factually uncontroverted.

final if ALJ dismissed hearing request).  Mr. Harvey would also be deprived of income during the pendency of any new application.

Finally, to require exhaustion would be futile here.  Mr. Harvey has failed to exhaust because he did not have a hearing, but there is no way for Mr. Harvey to correct that deficiency.  He has already sought review of the dismissal of his hearing request.  Indeed, the relief that Mr. Harvey is seeking here—a hearing—is the very procedure required to satisfy the exhaustion requirement.  Thus, because Mr. Harvey "has pursued every available administrative avenue to overturn the dismissal" of his hearing request and that decision is final, it would be futile to require Mr. Harvey to exhaust his administrative remedies.  *Howard v. Heckler*, 661 F. Supp. 654, 656 (N.D. Ill. 1986).  Indeed, "[l]ogic and common sense dictate that in a case such as this, where the claim is a constitutional one, future exhaustion would not merely be futile for the applicant but would also be a commitment of administrative resources unsupported by any judicial interest." *Ellison v. Califano*, 546 F.2d 1162, 1164-65 (5th Cir. 1977).

Accordingly, Mr. Harvey's claims survive the motion to dismiss for failure to exhaust.  Given the allegations set forth in the Complaint and the fact that the absence of a complete transcript renders the allegations uncontested, the Court finds that Mr. Harvey has pled a colorable constitutional claim.  The Commissioner's motion to dismiss will be denied.

The Commissioner's final argument is that this Court should reject the R&R's conclusion that Mr. Harvey needs additional time for discovery prior to summary judgment.  The Commissioner argues that under the Social Security Act "courts may not look beyond the pleadings and transcript of the record to render their judgments" and notes that some courts "have held that they lack authority under Section 205(g) of the Act to allow discovery or make their own findings of fact."  Def. Obj. at 6 (citing *Grant v. Shalala*, 989 F.2d 1332, 1334, n.17

(3rd Cir. 1993); *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).  But this argument is misplaced.  While the Court may be limited to the record below in affirming, modifying, or reversing a Commissioner's decision on the denial of benefits, Mr. Harvey does not mount such a challenge.  Rather, he alleges a colorable constitutional claim that would excuse his failure to exhaust and seeks a remand for a full hearing on the merits.  In order to determine whether Mr. Harvey's due process rights were violated, the Court agrees with Magistrate Judge Robinson that the parties must have an opportunity to submit further briefing and additional facts as needed.[15]

## IV.  CONCLUSION

For the reasons set forth above, the Court will adopt the Report and Recommendation in part. The Commissioner's Motion to Dismiss will be denied and the Courtroom Deputy shall set a status conference as soon as possible.  A memorializing Order accompanies this Opinion.

Date: July 1, 2015

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

---

[15] The Commissioner cites *Walters v. Leavitt*, 376 F. Supp. 2d 746, 756 (E.D. Mich 2005) for the proposition that discovery is not "permitted when the court's subject matter jurisdiction is challenged for a failure to exhaust administrative remedies, as is the case here."  Def. Obj. at 6. But the Commissioner extends *Walters* beyond its facts.  *Walters* determined "that discovery related to Defendant's facial and factual attacks on subject matter jurisdiction is not required" because it "is undisputed that Plaintiffs have failed to exhaust any administrative remedies, and Plaintiffs have not identified a disputed factual issue that would alter the court's jurisdictional conclusion under the statute."  *Walters*, 376 F. Supp. 2d at 756.